**Affirmed in Part, Reversed and Remanded in Part, and Majority Opinion and Concurring and Dissenting Opinion filed May 9, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01116-CV

---

## RICHARD ALAN HAASE, Appellant

## V.

## ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO AND FRIEND, LLP, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2011-17970**

---

## O P I N I O N

Richard Alan Haase pursued three claims of professional negligence against Abraham, Watkins, Nichols, Sorrels, Agosto and Friend, LLP ("Abraham Watkins"), a law firm that had previously represented him. Abraham Watkins moved for summary judgment on the basis of limitations. The trial court granted

the summary judgment, and Haase now appeals. We affirm in part, and reverse and remand in part.

## BACKGROUND

This case arises from a federal patent litigation. In the underlying case, Haase and his company, ClearValue, Inc., asserted an action against Pearl River Polymers, Inc. and four other entities (collectively "Pearl River") for alleged patent infringement and misappropriation of trade secrets. According to Haase, Pearl River manufactured chemicals for use in a water purification process, and certain of these products had a viscosity similar to a formula Haase had developed for the same purpose. Haase retained Gordon G. Waggett, a solo practitioner, as his patent attorney. On Waggett's recommendation, Haase assembled a litigation team headed by the Houston-based law firm of Abraham Watkins. Abraham Watkins filed suit on behalf of Haase in January 2005, and remained as counsel of record until August 28, 2006, when it withdrew from the case due to irreconcilable differences.

More than a year before trial, Haase obtained samples of Pearl River's products from a third party, and privately arranged for these products to be tested. The results showed that the samples' viscosity was far below that of Haase's patented formula. The testing was conducted at a time when Abraham Watkins was still representing Haase; however, the parties dispute whether Abraham Watkins was ever apprised of the testing. What is undisputed is that Haase never produced the results to Pearl River during discovery. He shared the results instead with Waggett and his retained expert, in violation of the federal court's order to provide such evidence to opposing counsel.

In March 2007, Haase's case proceeded to trial under new counsel. Early during the proceedings, the district court was informed of Haase's independent

2

testing and his failure to provide the results of that testing to Pearl River. Haase told the court that although he had personally seen the test results, he was not involved with the tests themselves and he did not know when the tests were conducted. Haase stated his belief that such information was protected by the attorney-client privilege. The court subsequently heard from Haase's testifying expert, who revealed that he too had seen the test results, thereby eliminating his claim of privilege. Haase then stated that he had not shared the test results with his litigation team because, in his opinion, the results were "irrelevant" to the case. The district court ordered Haase to locate the test results and produce them to opposing counsel. The court also informed the parties that it would consider "any motion for sanctions" the following morning.

Pearl River moved for sanctions the next day. During the hearing, Pearl River indicated that it had sought, by interrogatories and requests for production, any results of product testing in Haase's possession. No test results were ever produced or listed on a privilege log. The district court was shown evidence of emails between Haase, Waggett, and Haase's retained expert discussing the tests, which contradicted Haase's previous representation that he had not shared the results with his litigation team. The court stated that it was confronted with "an extremely troubling matter" because the test results had been withheld for over a year and a half. The court determined that only the "ultimate sanction" was appropriate: it therefore struck Haase's pleadings and entered judgment in Pearl River's favor. The court also imposed monetary sanctions against Haase and Waggett in an amount exceeding $2.7 million. On June 28, 2007, the court issued its formal sanctions decision. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 242 F.R.D. 362 (E.D. Tex. June 28, 2007).

On Haase's appeal of the sanctions, the federal appellate court affirmed in part and reversed in part. The court agreed that Haase's failure to disclose the results was performed willfully and in bad faith, and that this failure was supported by the record. However, the court also held that under governing precedent, Haase's conduct did not warrant death-penalty sanctions. On March 24, 2009, the appellate court reversed the order striking Haase's pleadings, reduced the monetary sanctions to $121,107.38, and remanded for an adjudication of Haase's claims. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291 (Fed. Cir. 2009).

On remand, a jury found in Haase's favor on his claims of misappropriation of trade secrets and indirect patent infringement. The damages for misappropriation were ultimately struck by the trial court. On November 2, 2010, the court entered judgment on the infringement claim, awarding damages to Haase in the amount of $2,172,617, together with prejudgment and postjudgment interest. The court then reduced the damages by an amount equaling the previously affirmed sanctions against Haase. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 735 F. Supp. 2d 560 (E.D. Tex. 2010).

Both sides appealed the district court's judgment. On February 17, 2012, the federal appellate court ruled in Pearl River's favor, concluding that Pearl River had not misappropriated a trade secret and that Haase's patent was invalid. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340 (Fed. Cir. 2012).

On March 23, 2011, during the pendency of his second federal appeal, Haase filed a pro se action in state court against Abraham Watkins, asserting three claims of professional negligence, or "legal malpractice," as it is sometimes denominated. Haase alleged first that Abraham Watkins was responsible for coordinating the product testing and labeling the results as "attorney-client work product." Haase contended that but for this labeling, he would not have been sanctioned by the

4

district court. Haase's second claim alleged that Abraham Watkins was negligent in failing to join additional tortfeasors in the federal complaint. In his third claim, Haase alleged that Abraham Watkins was negligent in failing to pursue a claim for fraud against one of the named Pearl River defendants. Haase contended that these latter two failures proximately caused his limited recovery. He also alleged two separate causes of action for negligent misrepresentation and breach of contract.

Abraham Watkins generally denied the allegations and filed a motion for summary judgment on traditional grounds. In its motion, Abraham Watkins claimed that it was completely unaware of the product testing and that there was no evidence to support a finding that it had knowledge of the testing. Abraham Watkins also argued that Haase's claims for professional negligence were barred by the two-year statute of limitations, and that his claims for negligent misrepresentation and breach of contract were precluded by the rule against fracturing a claim for professional negligence into separate causes of action. On September 26, 2011, the trial court granted summary judgment in favor of Abraham Watkins. Haase now appeals from that judgment.

## APPELLATE JURISDICTION

Before discussing the merits of Haase's appeal, we first address a jurisdictional challenge raised by Abraham Watkins. The argument here focuses on the timeliness of Haase's notice of appeal.

In most cases, a notice of appeal must be filed within thirty days after the date the judgment is signed. *See* Tex. R. App. P. 26.1(a); *Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010) (per curiam) (holding that a timely filed notice of appeal will invoke appellate jurisdiction, even if defective). If the notice of appeal is untimely, the reviewing court lacks jurisdiction and must dismiss the case. *See Charette v. Fitzgerald*, 213 S.W.3d 505, 509 (Tex. App.—Houston [14th Dist.]

5

2006, no pet.). The judgment here was signed on September 26, 2011. Haase filed his notice of appeal on December 27, 2011. Abraham Watkins argues that because that date falls more than ninety days after the date of summary judgment, this case must be dismissed for want of jurisdiction.

Haase responds that his notice of appeal should not be considered untimely because he did not receive notice of the trial court's judgment until December 27, the date of his filing. By rule, the appellate timetables may be extended for this reason:

> If a party affected by a judgment or other appealable order has not—within 20 days after the judgment or order was signed—either received the notice required by Texas Rule of Civil Procedure 306a.3 or acquired actual knowledge of the signing, then a period that, under these rules, runs from the signing will begin for that party on the earlier of the date when the party receives notice or acquires actual knowledge of the signing. But in no event may the periods begin more than 90 days after the judgment order was signed.

Tex. R. App. P. 4.2(a)(1).

The procedure for invoking this extension is governed by Rule 306a(5) of the Texas Rules of Civil Procedure. *See* Tex. R. App. P. 4.2(b); *In re Gen. Motors Corp.*, 296 S.W.3d 813, 820 (Tex. App.—Austin 2009, no pet.). Rule 306a(5) requires "the party adversely affected . . . to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first received a notice of the judgment or acquired actual knowledge of the signing." Tex. R. Civ. P. 306a(5); *see Nedd-Johnson v. Wells Fargo Bank, N.A.*, 338 S.W.3d 612 (Tex. App.—Dallas 2010, no pet.). A motion under this rule must be filed no later than ninety days after the original judgment is signed. *See* Tex. R. Civ. P. 306a(4). As the supreme court ruled in *Levit v. Adams*, "notice received after the 90th day is simply not covered by the Rule." 850 S.W.2d 469, 470 (Tex. 1993) (per curiam).

6

Relying on *Levit*, Abraham Watkins argues that the appellate timetables cannot be extended because Haase judicially admitted to receiving notice on December 27, 2011, which was the ninety-second calendar day after the date the judgment was signed. This argument fails to account for procedural rules governing the computation of time. In both the trial and appellate context, if the last day of a period prescribed by rule ends on a Saturday, Sunday, or legal holiday, then the rules extend the period to the end of the next eligible day that is not a Saturday, Sunday, or legal holiday. *See* Tex. R. App. P. 4.1(a); Tex. R. Civ. P. 4. Although the supreme court did not discuss these rules in *Levit*, we do not read that case to foreclose their application.

As mentioned previously, the trial court's summary judgment was signed on September 26, 2011. The ninetieth calendar day after September 26 was Christmas Sunday, December 25. Because this date fell on both a holiday and a weekend, Haase could not have filed any motion with the court. The same was true for Monday, December 26 because the day after Christmas is a legal holiday. *See* Tex. Gov't Code § 662.003(b)(8). The next day that was not a Saturday, Sunday, or legal holiday was Tuesday, December 27, 2011, the same date on which Haase filed his notice of appeal and his motion pursuant to Rule 306a(5). Therefore, Haase's motion for invoking the extension was timely. To avail himself of that extension, Haase had to next "prove in the trial court, on sworn motion" when he first acquired notice. *See* Tex. R. Civ. P. 306a(5).

Haase supplemented his motion, and in his sworn affidavit, he attested that he first received notice of the trial court's summary judgment on December 27. The motion was submitted to the trial court, and upon consideration of the pleadings, evidence, and arguments of counsel, the court issued findings of fact, which determined that "Haase first received notice or acquired actual knowledge of

this Court's final judgment . . . on December 27th, 2011." With this affirmative finding, the period for filing a notice of appeal would have begun ninety days after the date the judgment was signed, representing the maximum extension allowed by rule. *See* Tex. R. App. P. 4.2(a)(1). Haase filed his notice of appeal on the same day as his Rule 306a(5) motion. Because that date necessarily falls within the thirty-day period allowed after the ninety-day extension, we conclude that Haase timely perfected his appeal. *See* Tex. R. App. P. 4.2; Tex. R. App. P. 26.1. Accordingly, we are within our appellate jurisdiction to consider this case.

## ANALYSIS

Haase presents six issues for review. We address only those issues pertaining to the trial court's summary judgment.

### A. Standard of Review

We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue

8

of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of his cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

Abraham Watkins moved for summary judgment in two parts. It first argued that Haase's non-negligence claims were barred by the rule against fracturing. It then argued that Haase's negligence claims were barred by the two-year statute of limitations. We address both parts of this two-part argument in turn.

## B.    Fracturing

The rule against fracturing provides that a claimant for legal malpractice may not opportunistically transform a claim sounding in negligence into separate non-negligence causes of action. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The rule does not mean that a client is limited to pursuing only negligence causes of action. Other claims may still be advanced simultaneously, but the client must do more than merely reassert the same claim for legal malpractice under an alternative label. *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

When deciding whether an allegation states a claim for negligence or some other cause of action, we are not bound by the parties' own characterization of the pleadings. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427–28 (Tex. App.—Austin 2009, no pet.). Our analysis focuses primarily on ascertaining whether the facts alleged implicate an attorney's duty of ordinary care

or some other independently actionable duty. *Id.* at 428. As this court has stated previously,

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence.

*Deutsch*, 97 S.W.3d at 189 (citations omitted). Our analysis may also be guided by the remedy the plaintiff seeks. *See Murphy v. Gruber*, 241 S.W.3d 689, 698 (Tex. App.—Dallas 2007, pet. denied).

In addition to his claim for professional negligence, Haase asserted separate actions for negligent misrepresentation and breach of contract. According to the petition, these claims were based solely on the alleged actions and omissions of Randy Sorrels, a named partner at Abraham Watkins. The petition's failure to elaborate on these claims forecloses pleading of a duty independent of a traditional negligence claim.

For example, Haase averred in his petition that "Plaintiff will show this Honorable Court that *within Malpractice* Sorrels performed Negligent Misrepresentation in that in the course of business with Plaintiff Sorrels provided false information for the guidance of Plaintiff which lead [sic] to a pecuniary loss to Plaintiff due to the justifiable reliance by Plaintiff of the false information" (emphasis added). The claim of false information referred to Sorrels's alleged instruction to coordinate the product testing and then label the results as privileged. These facts clearly relate to Haase's discovery sanctions and the core of his claim for professional negligence. Indeed, Haase explicitly stated that these facts are "within" his claim for professional negligence. We conclude that Haase's claim for

10

negligent misrepresentation is merely a relabeled claim for professional negligence.

Haase's claim for breach of contract is similarly dependent on his claim for professional negligence. In his petition, Haase avers that "Plaintiff will show this Honorable Court that Sorrels['s] Malpractice comprises Sorrels['s] not performing as contracted." The performance issue of which Haase complained was the alleged failure to complete discovery and join another class of tortfeasors in his federal complaint. Because this allegation is merely a restatement of his professional negligence claim, Haase was precluded from asserting it as a separate cause of action. *Cf. Goffney*, 56 S.W.3d at 191–92 (concluding that claim sounded in negligence where attorney's failure to prepare and abandonment on the day of trial constituted a breach of the duty to represent the client, rather than a breach of contract).

## C.     Statute of Limitations—Sanctions Allegation

We conclude that Haase's only cause of action was for professional negligence. The petition reflects that this cause of action was based on three separate factual allegations. Those allegations stated that (1) Abraham Watkins coordinated the product testing, which proximately resulted in Haase's sanctions; (2) Abraham Watkins failed to complete discovery and failed to join additional tortfeasors in the federal complaint, thereby limiting Haase's recovery; and (3) Abraham Watkins failed to pursue an additional cause of action against one of the named Pearl River defendants, which also limited Haase's recovery. We now consider whether these claims were barred by the statute of limitations, beginning with the sanctions allegation.

For allegations of professional negligence, the statute of limitations is two years. *See Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). If the

11

running of limitations is asserted as a basis for summary judgment, the defendant assumes the burden of proving when the cause of action accrued. *See* Tex. R. Civ. P. 94; *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Burns v. Thomas*, 786 S.W.2d 266, 268 (Tex. 1990). A cause of action for legal malpractice accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action. *See Willis v. Maverick*, 760 S.W.2d 642, 643 (Tex. 1988); *Smith v. McKinney*, 792 S.W.2d 740, 742 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

Abraham Watkins argues that limitations began to run, at the latest, on June 28, 2007. On that date, Haase sustained a legal injury when the federal court imposed sanctions against him, which necessarily apprised him of any possible breach of duty committed during the discovery process. Following this date of accrual, limitations would have expired in 2009, making Haase's claim for negligence time-barred because it was not filed until March 2011.

Haase counters that the statute of limitations should not bar his suit, citing the *Hughes* tolling rule. In *Hughes v. Mahaney & Higgins*, the supreme court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." 821 S.W.2d 154, 157 (Tex. 1991); *see also Apex Towing*, 41 S.W.3d at 121–22 (clarifying that the *Hughes* tolling rule applies even in cases in which the attorney's representation terminates after the negligent act, but before the end of litigation); *Underkofler v. Vanasek*, 53 S.W.3d 343, 345–46 (Tex. 2001) (same). The court expressed two policy reasons for this rule. The court first observed that the legal injury rule and the discovery rule can force a client into the untenable

position of having to adopt inherently inconsistent litigation postures in the underlying case and the malpractice case. *See Hughes*, 821 S.W.2d at 156 (noting that a party might be placed in a position of asserting that her attorney committed malpractice and, but for that malpractice, her claim would have succeeded, while at the same time asserting in an underlying appeal that the attorney's actions were correct, or at least not fatal to her claim). The court then explained that limitations should be tolled for the malpractice claim because the viability of that claim depends on the outcome of the underlying litigation. *Id.* at 157.

Two appeals were taken in the underlying federal litigation. Because the sanctions issue was finally decided in the first, only that appeal is relevant to our analysis. The opinion in that appeal was dated March 24, 2009. Because he filed suit on March 23, 2011, just short of two years from the appeals court's decision, Haase argues that his suit is timely and within the statute of limitations. We disagree for the following reasons.

### 1. The *Hughes* tolling rule must be affirmatively pleaded.

*Hughes* does not expressly hold that a plaintiff must affirmatively plead the tolling rule and the facts pertinent thereto before he may avoid the running of limitations. However, based on analogous case law, we conclude that such facts must be pleaded.

In *Woods v. William M. Mercer, Inc.*, the supreme court determined that the discovery rule was a plea in avoidance of the statute of limitations. 769 S.W.2d 515, 517 (Tex. 1988). A plea in avoidance "is one which avows and confesses the truth in the averments of fact in the petition, either expressly or by implication, but then proceeds to allege new matter which tends to deprive the facts admitted of their ordinary legal effect, or to obviate, neutralize, or avoid them." *Id.* The discovery rule fits this definition because, when affirmatively pleaded, it "asserts

13

that while the statute of limitations may appear to have run, giving rise to that appearance should not control." *Id.* at 517–18.

The *Hughes* tolling rule functions much like the discovery rule because it also operates to deprive the statute of limitations of its ordinary legal effect. Limitations would normally begin to run on the date a legal injury is sustained, but the *Hughes* tolling rule operates to toll the running of limitations until all underlying appeals have been exhausted. Although the legal injury may appear to have occurred prior to the appeal, the viability of the malpractice action cannot be not known until the appeal is finally settled. *See Hughes*, 821 S.W.2d at 157 ("Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first.").

Consistent with *Woods*, we hold that the *Hughes* tolling rule, like the discovery rule, is a plea in avoidance. Because *Woods* also holds that a plea in avoidance must be affirmatively pleaded, we conclude that a malpractice claimant must affirmatively plead the *Hughes* tolling rule, either in the original petition or in an amended or supplemental petition, or else it is forfeited. *See* Tex. R. Civ. P. 94 (requiring the affirmative pleading of any matter "constituting an avoidance or affirmative defense"); *Woods*, 769 S.W.2d at 518 (holding that the discovery rule must be affirmatively pleaded); *Hall v. Stephenson*, 919 S.W.2d 454, 465 (Tex. App.—Fort Worth 1996, writ denied) (stating that a plaintiff must affirmatively plead the *Hughes* tolling rule); John H. Bauman, *The Statute of Limitations for Legal Malpractice in Texas*, 44 Baylor L. Rev. 425, 447 (1992) (analogizing the *Hughes* tolling rule with the discovery rule, and concluding that the *Hughes* tolling rule must be affirmatively pleaded).

**2.      Haase did not affirmatively plead the *Hughes* tolling rule in either his original petition or his amended petition.**

Haase argues that he did plead the *Hughes* tolling rule, citing three specific paragraphs from his original petition. The paragraphs contain technical descriptions of Haase's patent, along with damages alleged from the handling of the underlying suit.[1] The factual allegations do not discuss the timing of the sanctions decision or the appeal that followed. We conclude that because the paragraphs mainly just describe the nature of Haase's injury, they are insufficient to invoke the *Hughes* tolling rule.

---

[1] The paragraphs are replete with acronyms for scientific terms. They state the following:

> As there are many SNF Distributors [defined in the underlying patent litigation as the distributors and customers of one of the named Pearl River defendants] serving thousands of water purification plants across the United States, many of which would combine SNF HMW DADMAC and/or HMW Epi-DMA with ACH in the clarification of water, it was important to Plaintiff and ClearValue that Sorrels complete discovery with SNF to define which SNF Distributors either misappropriated Plaintiff's Trade Secrets with SNF and/or infringed the '690 Patent with SNF. Sorrels refused. Sorrels refused to pursue discovery with SNF and/or to file a motion to compel against SNF.

> \* \* \*

> To develop coagulants of the '690 Patent or '849 Application, SNF HMW DADMAC and/or HMW Epi-DMA is blended with ACH in a ratio of about 0.5:0.5 to 0.99:0.05 HMW DADMAC and/or Epi-DMA:ACH with an average of near 0.1:0.9. Therefore, including any reasonable profit and operating expense for SNF Distributors, every $1 in HMW DADMAC and/or Epi-DMA represent about near $20 in coagulant. Therefore, had Sorrels completed discovery, Plaintiff and ClearValue could have timely included SNF Distributors the Federal Complaint for damages of near $140,000,000 ($7,000,000 X 20).

> Further, Plaintiff's '690 Patent and '849 Application require about on average 10 pounds of coagulant to clarify 1,000,000 pounds of water, which has a value in excess of $1,000 per million gallons = $120 per million pounds. Therefore, each $1 of SNF HMW DADMAC and/or Epi-DMA, which converts to near $20 in coagulant sales, also converts to near $400 in clarified water @ $0.60 per pound of SNF Distributor coagulant. Therefore, had Sorrels completed discovery, Plaintiff and ClearValue could have included Customers of SNF Distributors in the Federal Complaint for damages in excess of $1 billion ($7,000,000 X 20 X 20).

Haase filed an amended petition after receiving an answer from Abraham Watkins. In its answer, Abraham Watkins plainly asserted the defense of limitations, which notified Haase that the issue would be litigated. Haase did not respond to the limitations issue in his amended petition, however. Indeed, he makes no argument that the amended petition raises a plea in avoidance.

### 3. Haase did not assert the *Hughes* tolling rule in the summary judgment record.

Failing to plead the *Hughes* tolling rule is not always fatal, however. An unpleaded plea in avoidance may still serve to preclude summary judgment if it is raised in a summary judgment response and if the opposing party fails to object to it in a reply or before the rendition of judgment. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (concluding that movant could assert an unpleaded affirmative defense of lack of consideration, where nonmovant failed to object to the late assertion in his written response); *Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.) (reversing summary judgment based on nonmovant's unpleaded assertion of the discovery rule in his summary judgment response, where movants failed to object to late assertion before the rendition of judgment). We now examine the summary judgment record to determine if Haase timely asserted the *Hughes* tolling rule in his response.

Haase filed two responses to the motion for summary judgment. In his initial response, he dedicated just a single paragraph to the limitations issue. His argument was as follows:

> Non-movant presents to this Honorable Court that Movant is incorrect. Specifically, (i) Non-movant was not even aware of the Federal Rules of Civil Procedure nor had Non-movant been sanctioned for the legal error of Sorrels until the first judgment . . . on November 29, 2007; after which, Non-movant appealed to the Court of Appeals for the Federal Circuit; and after which, on March 24,

2009 the Court of Appeals for the Federal Circuit Ruled; (ii) Non-movant had no recoverable damages related to the lack of discovery performed by Movant until Final Judgment . . . was entered on August 12, 2010; and (iii) given events, Non-movant lost all rights of his claim until obtaining Final Judgments . . . and did not regain any of his rights of claim until the Ruling of the Federal Court of Appeals on March 24, 2009. "For the purposes of application of limitations statute, a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy, and the aggrieved party knows or should know of the existence of these facts." Further, the statute of limitations clock begins ticking "when the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter." Therefore, it was not until the Ruling of the Court of Appeals for the Federal Circuit that Non-movant was authorized and entitled to seek a judicial remedy. And, the Ruling of the Court of Appeals for the Federal Circuit did not occur until March 24, 2009. While, the statute of limitations is two (2) years. And while, Non-movant filed his Original Petition on March 23, 2011.

(footnotes omitted).

The argument in this paragraph is not entirely clear. Aspects of the paragraph seem to conflate the discovery rule with the general accrual rule: Haase recognizes that a cause of action accrues (under the discovery rule) when a party "knows or should know of the existence" of facts giving rise to a legal remedy; but, he also argues—incorrectly—that he was not "authorized and entitled" to seek a judicial remedy (under the general accrual rule) until his federal appeal was exhausted.[2] Neither statement is a correct application of *Hughes*. The *Hughes* decision establishes a procedure for tolling the statute of limitations after a claim has accrued—not, as Haase appears to assert, a basis for determining when the tort

---

[2] Haase's references to the general accrual rule—*i.e.*, "when facts come into existence authorizing a claimant to seek a judicial remedy" and "when the plaintiff first becomes entitled to sue"—show that Haase's claim accrued when he was sanctioned on June 28, 2007. *See Hughes*, 821 S.W.2d at 156 ("A cause of action for legal malpractice accrues when the client sustains a legal injury").

is completed. We cannot say that Haase's response is sufficiently specific to raise the *Hughes* tolling rule. Haase did not cite *Hughes* in his response, and he used no language to argue that the statute of limitations should be "tolled." *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence.").

In its reply to Haase's response, Abraham Watkins criticized Haase's "awkward effort" to "quasi-assert" the discovery rule. Noting that Haase had not pleaded the discovery rule, Abraham Watkins formally objected to trying that issue by consent. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) (holding that when a nonmovant's unpleaded plea in avoidance is asserted for the first time in a summary judgment response, the movant may either object that the plea in avoidance had not been pleaded, or respond on the merits and try the issue by consent). Abraham Watkins did not mention the *Hughes* tolling rule in its reply, apparently in the belief that it had not been raised.

In the second response, his sur-reply, Haase made his first unequivocal assertion of the *Hughes* tolling rule.[3] He quoted the rule verbatim, included an appropriate citation to another supreme court case that repeated the rule, and in a

---

[3] Our dissenting colleague contends that Haase's first response did raise the *Hughes* tolling rule, but the parties' subsequent behavior shows otherwise. Abraham Watkins objected to Haase's invocation of the discovery rule in his first response because he had not pleaded that rule. There is no indication that Abraham Watkins interpreted Haase's response as raising the *Hughes* tolling rule, which Haase also had not pleaded. Moreover, Haase's second response shows that he knew how to raise the *Hughes* tolling rule expressly, confirming that he did not do so in his first response. If we nevertheless interpreted Haase's first response to raise the *Hughes* tolling rule, as the dissent does, we would unfairly deprive Abraham Watkins of a reasonable opportunity to avoid trying that unpleaded theory by consent.

18

neatly focused paragraph, argued that his "claims are tolled." Abraham Watkins filed no objection to this late assertion of the *Hughes* tolling rule. Ordinarily, the failure to object to an unpleaded tolling provision will result in the parties' trying that issue by consent. *See Proctor*, 172 S.W.3d at 652. In this case, however, Haase's assertion was too late to be included in the summary judgment record.

Rule 166a provides, "Except on leave of court, the adverse party [to a motion for summary judgment], not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." Tex. R. Civ. P. 166a(c). Abraham Watkins moved for summary judgment on June 29, 2011, and set a date for submission on July 25, 2011, at 9:00 a.m. Haase filed his first response on July 18, 2011, within the deadlines prescribed by rule. His sur-reply, however, was filed the morning of July 25, thirteen minutes before the motion was set for submission. Our record does not reflect that Haase requested leave of court to file his sur-reply on the day of submission, and the recitals from the final order do not indicate that the trial court considered the sur-reply when ruling on the motion for summary judgment. Although judgment was not granted until September 2011, we must presume under these facts that Haase did not have leave of court to file his sur-reply.[4] *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (presuming that affidavit was not properly before the trial court where affidavit was filed two days before the summary judgment hearing); *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985); *Frankoff v. Norman*, No. 14-11-00152-CV, 2012 WL 2394050, at *7 (Tex. App.—Houston [14th Dist.] June

---

[4] "Rule 166a does not specify when the movant's reply to the nonmovant's response should be filed." David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 46 Hous. L. Rev. 1379, 1407 (2010). Local rules dictate that all responses "shall be filed at least two working days before the date of submission, except on leave of court." *See* Harris County Civil Trial Division Rule 3.3.3, *available at* http://www.justex.net/courts/civil/LocalRules.aspx. Abraham Watkins filed its reply more than two days before the date of submission, though less than seven. Unlike Haase, it was not required to obtain leave of court to file the reply.

26, 2012, no pet.) (mem. op.) (applying *Benchmark Bank* where summary judgment motion was considered on submission, rather than by hearing). Therefore, the sur-reply, and the *Hughes* tolling rule pleaded within it, may not be considered part of the summary judgment record. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 612 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

### 4. The cause of action for the sanctions allegation is time-barred.

Haase's first response to the motion for summary judgment was ineffective to raise the *Hughes* tolling rule, and his sur-reply cannot be considered for summary judgment purposes. Because no applicable tolling provision was otherwise asserted in the pleadings, the timeliness of Haase's petition must be adjudged solely from the date his cause of action accrued.

The summary judgment evidence showed that Haase was sanctioned on June 28, 2007, for discovery abuse relating to his independent testing of Pearl River's products. Because Haase sustained his legal injury no later than that date, any cause of action based thereon had to be filed no later than June 29, 2009. Haase filed his petition on March 23, 2011, outside the two-year statute of limitations. Abraham Watkins was accordingly entitled to summary judgment as to this claim.

### D. Statute of Limitations—Remaining Allegations

Haase's two remaining allegations contend that Abraham Watkins was negligent by failing to sue additional tortfeasors and by failing to pursue an additional cause of action against one of the Pearl River defendants. Because these allegations complain of unawarded damages at the conclusion of litigation, they represent distinct legal injuries apart from those sustained when the district court imposed sanctions. Accordingly, the causes of action for these two remaining

20

allegations may have accrued on a different date. As the movant below, Abraham Watkins assumed the burden of establishing the date of their accrual.

The supreme court has held that "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). In its motion, Abraham Watkins argued that these causes of action accrued no later than August 28, 2006, when it withdrew from the case due to irreconcilable differences. The date of withdrawal is significant in one respect: it represents the last possible time in which Abraham Watkins could have committed a wrongful act during the course of the litigation. However, to prove that a cause of action has accrued, Abraham Watkins needed to establish that its wrongful act, if any, also caused a legal injury. This burden was not satisfied.

In its motion for summary judgment, Abraham Watkins focuses primarily on the sanctions allegation and argues that that specific cause of action is barred by the statute of limitations. Abraham Watkins does not discuss the remaining allegations at any considerable length, and it never expressly argues when Haase sustained a legal injury as to those allegations. Establishing when the injury was sustained is essential to proving that the tort was completed and the cause of action accrued.

The date of accrual proposed by Abraham Watkins essentially suggests that Haase could have filed his claims as early as August 29, 2006, the day after Abraham Watkins withdrew. We do not agree that Haase's torts were completed by that time. To recover on a claim of professional negligence, there must have been some facts in existence showing that Haase was damaged by the allegedly negligent preparation of his federal complaint. *See Alexander v. Turtur & Assocs.,*

*Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (enumerating the elements of a cause of action for professional negligence). However, on the date of withdrawal, Haase's case had not yet proceeded to trial; that date was still more than six months away, in March 2007. In the intervening time, Haase or his newly retained attorneys could have amended the pleadings or sought leave of court to file claims against additional tortfeasors. Nothing in the record indicates that Haase was precluded from obtaining this relief on the date Abraham Watkins withdrew. *See* Fed. R. Civ. P. 15 (providing that a plaintiff may amend his pleadings within twenty-one days of service, with the written consent of the opposing party, or with leave of court). Moreover, Abraham Watkins has not explained how Haase could have proven any damages on the date of withdrawal, before an adjudication of his other claims. *See Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex. 1995) (per curiam) (providing that "the statute of limitations for malpractice for failure to sue a tortfeasor is tolled until litigation has concluded against other tortfeasors liable for the same indivisible injury"); *Estate of Whitsett v. Junell*, 218 S.W.3d 765, 770 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (providing similar authority for claims alleging failure to assert additional causes of action against existing defendants). Abraham Watkins has not carried its burden of showing that Haase sustained a legal injury by the date of withdrawal.

An analogous conclusion was reached in *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967). In that case, a business owner filed a petition against his accountant in 1963, alleging that he negligently prepared an income tax return in 1960. When the accountant was first hired in 1958, he calculated the business owner's tax liability using the cash method of accounting, rather than the accrual method. In 1960, the accountant switched to the accrual method to minimize the business owner's tax liability, but he failed to comply with IRS regulations for

changing the basis on which he regularly computed income. Because of this noncompliance, the IRS assessed a deficiency in 1961, less than two years from the date of the business owner's suit. *Id.* at 151–52.

The accountant attempted to show that the cause of action was barred by the statute of limitations, arguing that all of his wrongful acts had occurred in 1960, more than two years before suit was filed. The supreme court disagreed, noting that the accountant's actions alone were insufficient to trigger the accrual of a cause of action. Instead, the court observed, the wrongful acts had to have resulted in some legal injury before the tort was completed and actionable. In this instance, the legal injury was not sustained until the assessment by the IRS. *See id.* at 153 ("If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action."). Because the tort was not completed until long after the accountant's wrongful acts, the court concluded that the business owner's cause of action was timely and within the statute of limitations. *See id.*

Like the accountant in *Atkins*, Abraham Watkins attempts to establish that the causes of action against it are time-barred based solely on the latest date of its allegedly wrongful conduct. Abraham Watkins has not shown, or even argued, the date on which Haase sustained a legal injury. Therefore, Abraham Watkins has not proven when the torts alleged by Haase were completed. By failing to show when the cause of action accrued, Abraham Watkins has not established that it was entitled to summary judgment as a matter of law.

## E.    Remand

In his sixth issue, Haase argues that if we decide to reverse the trial court's judgment, we should remand this case to another county and district court. Haase essentially contends that Abraham Watkins is a well-known and well-connected

law firm in the Houston area, and that the firm's established presence has prevented him from obtaining a capable malpractice attorney to represent him.

As the plaintiff below, Haase elected to try his case in Harris County when he filed his petition with the Harris County District Clerk. Haase has provided no authority, and we are aware of none, that would permit a plaintiff to select an alternate venue on remand based on his stated reason. Haase's sixth issue is overruled. *See* Tex. R. App. P. 38.1(i) (providing that the appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

## CONCLUSION

After applying the rule against fracturing, we conclude that Haase's only claim was for professional negligence, and that this claim was based on three separate factual allegations: (1) that Abraham Watkins coordinated the product testing, which led to Haase's discovery sanctions; (2) that Abraham Watkins failed to include additional tortfeasors in Haase's federal complaint, which limited his recovery in the district court's 2010 judgment; and (3) that Abraham Watkins failed to pursue a fraud claim against a Pearl River defendant, which also limited his recovery. We affirm the trial court's judgment to the extent it concludes that Haase's cause of action based on the first factual allegation is barred by the statute of limitations. As for the remaining two allegations, the trial court's summary judgment is reversed and remanded for additional proceedings consistent with this opinion.

/s/        Adele Hedges
                Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby. (Brown, J., concurring and dissenting).