**Affirmed and Opinion filed June 10, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00731-CV

---

**JERRY ALFRED FUTCH, JR., Appellant**

**V.**

**BAKER BOTTS, LLP, Appellee**

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2008-57943**

---

## OPINION

After pleading guilty to the felony offense of false reporting, a former client sued the law firm that had represented him, asserting a claim for breach of contract and seeking forfeiture of attorney's fees based on alleged breaches of fiduciary duty. The trial court granted summary judgment in favor of the law firm based on

the grounds that (1) the contract claim, which was based on the law firm's alleged disclosure of confidential information, sounded in tort rather than in contract; and (2) under the *Peeler* doctrine,[1] the plaintiff, a convicted felon who has not been exonerated, as a matter of law may not recover tort damages or obtain the equitable remedy of fee forfeiture. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Jerry Alfred Futch, Jr. worked for Reliant Energy Services, Inc. as a gas trader. In 2003, Futch was a Director of the Gulf Coast/Northeast Natural Gas Trading section. According to the allegations in Futch's live pleading,[2] in 2002, the Federal Energy Regulatory Commission's Office of Markets, Tariffs and Rates conducted an investigation into the potential for manipulation of electric and natural gas prices. Later, the United States Commodities Futures Trading Commission (hereinafter, the "Commission") initiated an investigation into certain trading by energy and power manufacturing companies, including Reliant.

In relation to the Commission's investigation, Futch was asked by his superiors to meet with attorneys from appellee/defendant Baker Botts, L.L.P. (hereinafter, the "Law Firm"), a law firm representing Reliant, to assemble information and documents responsive to requests made by the Commission. Over the course of several weeks, Futch worked closely with lawyers from the Law Firm to assist in the preparation of Reliant's response to the Commission's investigation.

---

[1] *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 495–500 (Tex. 1995) (plurality op.).

[2] The alleged facts giving rise to Futch's claim recited in this section are taken from the factual allegations in Futch's live pleading. For convenience, we do not repeat each time that these are allegations. Many of these allegations are disputed, but we need not resolve these disputes to adjudicate this appeal.

The Commission issued a subpoena in early March 2003, for Futch's deposition. Three weeks later, one of the lawyers at the Law Firm sent Futch a proposed letter agreement stating that the Law Firm and another law firm had been engaged at the request of Reliant to represent Futch and that Reliant had agreed to pay Futch's legal fees and expenses. The letter agreement set forth various terms regarding the Law Firm's engagement.[3] By the end of the month, Futch had signed this letter agreement and accepted the Law Firm's offer to represent him.

Futch alleges that the Law Firm advised him that he should give deposition testimony to the Commission and, in April 2009, he did so in reliance on this advice. This deposition testimony was later used against Futch in an obstruction-of-justice claim. According to Futch, the Law Firm did not counsel him regarding his Fifth Amendment rights either before or during the deposition.

In the sixteen months following the deposition, Futch had very little contact with the Law Firm, only a few phone calls. In November 2003, the Commission issued an order making findings and imposing sanctions against Reliant for manipulation of the gas market. The order allegedly put Reliant on notice that there existed a conflict of interest between Reliant and Futch. Futch asserts that the Law Firm did not inform him of this conflict of interest and that the Law Firm continued to represent Futch for another year.

Lawyers from the Law Firm came to Reliant's offices in August 2004, to interview Futch regarding an "Inside FERC" report that Futch did not know had been given to the Law Firm by an Assistant United States Attorney. This interview

---

[3] The record reflects that the terms and duration of the Law Firm's engagement are the subject of various disputes between Futch and the Law Firm. We need not resolve these disputes to adjudicate this appeal.

allegedly was later provided to an Assistant United States Attorney without Futch's knowledge or permission. The next day, the Law Firm sent a letter confirming a conversation with government agents seeking copies of telephone calls relating to Futch. Futch asserts he was never told of this inquiry by the United States government or that the Law Firm was voluntarily providing information to Assistant United States Attorneys. The information the Law Firm provided allegedly was used in the indictment against Futch.

During September 2004, lawyers at the Law Firm allegedly sent at least six CD ROMs of audio recordings focusing on Futch. The Law Firm never told Futch that it was sending this evidence to Assistant United States Attorneys. The information provided allegedly was used in the criminal prosecution of Futch.

The following month, Futch received a letter from the Law Firm stating that it was "disengaging" from its representation of Futch and that Futch would need to retain separate counsel for his legal representation going forward. The Law Firm stated that information recently had come to its attention that made it inappropriate for the Law Firm to represent both Reliant and Futch going forward.

In November 2004, a sealed indictment was returned against Futch charging him with four counts of felony false reporting in violation of Title 7, section 13(a)(2) of the United States Code. In June 2005, Futch pleaded guilty to one of these counts, and the other three counts were dismissed later. Futch was adjudicated guilty and sentenced to fifty-seven months' imprisonment. Futch appealed. The judgment is now final by appeal.

Futch filed suit in the trial court below against the Law Firm and other

defendants.[4]  The Law Firm filed a traditional motion for summary judgment, asserting a single ground: under the *Peeler* doctrine, Futch, a convicted felon who has not been exonerated, as a matter of law may not recover tort damages or obtain the equitable remedy of fee forfeiture.  Futch then filed an amended petition, in which he added a breach-of-contract claim against the Law Firm.  In the amended pleading, Futch alleged that the Law Firm breached its contract with him by giving his confidential information, including notes of privileged communications between the Law Firm and Futch, to officials with the United States Department of Justice.  Based on the Law Firm's alleged breach of contract, Futch sought benefit-of-the-bargain damages, which he alleged were measured by the difference between the value of the services the Law Firm provided and the value of the services it agreed to provide.  In his amended pleading, Futch also asserted that the Law Firm committed clear and serious breaches of the fiduciary duty it owed to him as its client.  Futch did not seek damages based on the Law Firm's alleged breaches of fiduciary duty; instead, he sought only the equitable remedy of fee forfeiture.

The trial court granted the Law Firm's summary-judgment motion, and Futch filed a notice of appeal.  This court determined that the trial court had not disposed of Futch's breach-of-contract claim and that this court lacked appellate jurisdiction over the trial court's interlocutory summary-judgment order.  *See Futch v. Reliant Sources, Inc.*, 351 S.W.3d 929, 931–33 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The Law Firm then filed a filed a second traditional motion for summary judgment, asserting that it was entitled to judgment as a matter of law because the

---

[4] Futch later nonsuited his claims against all defendants other than the Law Firm.

5

contract claim, which was based on the Law Firm's alleged disclosure of confidential information, sounded in tort rather than in contract. The trial court granted the second motion and signed a final summary judgment. Futch now challenges that judgment in this appeal.

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. ANALYSIS

In a single appellate issue Futch asserts that the trial court erred in granting summary judgment. Futch proffers several arguments in support of the proposition that the *Peeler* doctrine does not apply to his breach-of-contract claim or his

breach-of-fiduciary duty claim seeking only fee forfeiture. Futch argues that he asserted a valid breach-of-contract claim and that his contract claim sounds in contract rather than in tort.

## A. Does the claim based on the alleged disclosure of confidential or privileged information sound in contract?

In the second summary-judgment motion the Law Firm asserted that Futch impermissibly fractured tort claims into a contract claim and that the claim based on the Law Firm's alleged disclosure of Futch's confidential information sounds in tort, not in contract. When deciding whether an allegation against an attorney states a claim sounding in negligence or some other claim, we are not bound by the client's characterization of the pleadings. *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto, & Friend*, 404 S.W.3d 75, 82 (Tex. App.—Houston [14th Dist.] 2013, no pet.). If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim.[5] *See id*. at 82–83; *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.). If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, a violation of the Texas Deceptive Trade Practices Act ("DTPA"), breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence. *See Haase*, 404 S.W.3d at 82–83; *Deutsch*, 97 S.W.3d at 189.

---

[5] To avoid confusion, in this opinion a claim that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess is referred to as a negligence claim rather than as a legal malpractice claim or as a malpractice claim.

In his amended petition Futch did not assert any negligence claim against the Law Firm; Futch asserted a claim for breach of fiduciary duty, in which the only remedy sought was fee forfeiture. The only other claim that Futch purported to assert against the Law Firm in his live pleading was a breach-of-contract claim in which he alleged the Law Firm entered into an agreement with him to represent him in connection with the investigation into how gas prices were being reported to publishers that were then reported to various indices. Futch alleged that one of the terms of this agreement was that confidential information he provided to the Law Firm would be shared with other clients in the joint representation pursuant to a joint-defense privilege and that Reliant might choose to disclose such information to the Commission and other regulatory agencies. According to Futch, however, it was not a term of this agreement that the Law Firm or Reliant had the authority to provide Futch's confidential information to officials with the United States Department of Justice. Futch alleges that the Law Firm breached its contract with him by giving notes of its privileged communications with Futch to Justice Department officials. Futch sought benefit-of-the-bargain damages allegedly resulting from this purported breach of contract.

Though Futch asserts that the Law Firm breached its contract by giving notes of its privileged communications with Futch to the Justice Department, Futch does not assert that the Law Firm promised in its agreement with Futch not to disclose Futch's confidential or privileged information, and Futch's letter agreement with the Law Firm, attached to his live pleading, does not contain such a promise by the Law Firm. We conclude that Futch's claim against the Law Firm for damages resulting from its alleged disclosure of confidential or privileged

8

information to officials with the Justice Department sounds in tort, not in contract.[6] *See Haase*, 404 S.W.3d at 83; *Cooper v. Harris*, 329 S.W.3d 898, 905 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Trousdale v. Henry*, 261 S.W.3d 221, 227–33 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Under the applicable standard of review, the trial court did not err in concluding that Futch's breach-of-contract claim failed as a matter of law or in dismissing this claim by summary judgment. *See Haase*, 404 S.W.3d at 83; *Cooper*, 329 S.W.3d at 905; *Trousdale*, 261 S.W.3d at 227–33.

**B.    Does the *Peeler* doctrine bar the breach-of-fiduciary-duty claim under which fee forfeiture is sought?**

In its first summary-judgment motion, the Law Firm asserted that, under the *Peeler* doctrine, a person convicted of a crime who has not been exonerated, as a matter of law may not recover tort damages or obtain the equitable remedy of fee forfeiture. In his live pleading, Futch sought only fee forfeiture as a remedy for his breach-of-fiduciary-duty claim, and Futch did not specify in his pleading the conduct by the Law Firm that he claims amounted to a breach of fiduciary duty. Because no special exceptions were sustained against Futch's live petition, this court construes that pleading liberally in Futch's favor to include all claims that reasonably may be inferred from the language used in the petition, even if the petition does not state all the elements of the claim in question. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000). Assessing Futch's pleading under this construction, we conclude that Futch asserted that the Law Firm breached its fiduciary duty by the following conduct:

---

[6] We need not and do not address whether this claim sounds in negligence or breach of fiduciary duty. In either event, it does not sound in contract.

- advising Futch he should give deposition testimony to the Commission,

- failing to counsel Futch regarding his Fifth Amendment rights,

- failing to disclose the Law Firm's conflict of interest in representing both Futch and Reliant,

- continuing to represent both Futch and Reliant despite a conflict of interest,

- failing to disclose to Futch that the "Inside FERC" report discussed with him during an interview in August 2004, had been given to the Law Firm by an Assistant United States Attorney,

- providing a recording of this interview to an Assistant United States Attorney without Futch's knowledge or permission,

- talking to agents of the United States government about the agents' requests for recordings of telephone calls relating to Futch without disclosing this conversation or these requests to Futch,

- failing to disclose to Futch that the Law Firm voluntarily was providing information inculpating Futch to Assistant United States Attorneys,

- sending at least six CD ROMs of audio recordings focusing on Futch to Assistant United States Attorneys and failing to disclose this action to Futch,

- failing to inform Futch that Reliant was cooperating with the United States Attorney's office, or that Futch was under criminal investigation, or that the Law Firm had turned over documents, or that the government was seeking to build a criminal case against Futch,

- meeting with prosecutors multiple times and communicating with them by phone, mail, and email, without telling their client Futch about these meetings or communications, and

- giving Futch's confidential or privileged information to officials with the Justice Department.[7]

---

[7] The Law Firm disputes these allegations, and we need not address the truth or validity of these

10

(hereinafter, collectively "Alleged Breaches of Fiduciary Duty"). We now consider the *Peeler* case and cases from this court applying the *Peeler* doctrine to determine the applicable legal standard.

In *Peeler*, Carol Peeler pleaded guilty to a criminal offense and received a sentence pursuant to a plea agreement. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995) (plurality op.). Shortly thereafter, Peeler was told by a journalist that the United States Attorney had made an offer to Peeler's attorney of absolute transactional immunity if Peeler would become a witness and testify against her colleagues. *See id.* The revelation by the journalist was the first Peeler had heard of any offer of absolute immunity because her attorney had not communicated any such offer to her. *See id.* at 496, 498. The prosecuting attorney, an assistant United States Attorney, testified that he made this offer to Peeler through her attorney, and an agent of the Internal Revenue Service testified that, during plea-bargain discussions, the prosecutors told Peeler's attorney that the offer of immunity previously made was no longer available. *See id.* at 496, n.1, 498. Peeler's attorney denied that the assistant United States Attorney ever spoke to him concerning immunity for Peeler. *See id.* at 500 (Hightower, J., concurring).

Peeler sued her attorney and his law firm seeking damages based on claims for alleged DTPA violations, negligence, breach of contract, and breach of warranty. *See id.* at 496. The trial court granted the defendants' summary-judgment motion on the ground that Peeler had not been exonerated and that her criminal conduct was the sole proximate cause or sole producing cause of her alleged damages. *See id.* The court of appeals affirmed, and after granting review, the Supreme Court of Texas also affirmed. A four-justice plurality noted

allegations to adjudicate this appeal.

that the Supreme Court of Texas had not addressed whether a client's criminal conduct is, as a matter of law, the sole proximate or producing cause of the client's eventual conviction and damages, such that a "legal malpractice" claim[8] against the attorney may not be brought absent a showing that the plaintiff has been exonerated from the criminal conviction, either by direct appeal, post-conviction relief, or otherwise. *See id*. at 496–97. The *Peeler* plurality observed that nearly every court in the United States that has addressed the question of whether a convicted criminal may sue her attorney had held that, for reasons of public policy, the client's criminal conduct is the only cause of any injury suffered as a result of conviction. *See id*. at 497. The plurality quoted with approval the statement of a Missouri court that it is against public policy to allow a convicted criminal to pursue a "legal malpractice claim" without requiring proof of innocence because criminals should not be allowed to profit from or base a damage claim upon their criminal conduct. *See id*. at 497.

The four justices in the *Peeler* plurality concluded that under Texas public policy, "plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id*. at 497–98. This conclusion was based on Texas public policy considerations that convicted criminals should not be allowed to profit from their illegal conduct and that allowing convicted criminals a civil

---

[8] The *Peeler* plurality sometimes uses the term "legal malpractice" or "a legal malpractice claim." These terms might be used to refer to any claim brought by a client against that client's attorney or these terms might be used to refer only to a negligence claim in which the issue is whether the attorney exercised that degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 184, n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

recovery would impermissibly shift responsibility for the crime away from the criminal. *See id*. at 498. The plurality determined that, as a matter of law, it is the illegal conduct of the client rather than the allegedly actionable conduct of the attorney that is the cause in fact of any injury flowing from the client's criminal conviction. *See id*. Because Peeler had not been exonerated, the *Peeler* plurality concluded that her criminal conduct was the sole proximate cause and sole producing cause "of her indictment and conviction as a matter of law." *Id*. The justices stated that Peeler's claim for alleged DTPA violations also failed as a matter of law because Peeler had to prove that these violations were the cause in fact of her alleged damages. *See id*. Peeler's claims for breach of contract and breach of warranty were not before the high court. *See id*.

The *Peeler* plurality did not mention what damages Peeler sought to recover. *See id*. at 495–500. Nor did the *Peeler* plurality address: (1) the claims, other than negligence and DTPA, to which this public policy applies, (2) the types of damages to which this public policy applies,[9] or (3) whether this public policy applies to requests for fee forfeiture based on clear and serious breaches of the attorney's fiduciary duty to the client.

Since the *Peeler* case, the Supreme Court of Texas has not granted review in a case involving this doctrine. Nonetheless, in a series of opinions, this court has adopted and applied an expansive interpretation of the doctrine articulated in the plurality opinion in *Peeler*.[10] *See Meullion v. Gladden*, No. 14-10-01143-CV, 2011 WL 5926676, at *2–4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no

---

[9] For example, this public policy might bar (1) only damages based directly on the plaintiff's conviction, or (2) damages based directly or indirectly on the plaintiff's conviction, or (3) any damages at all regardless of their relationship to the plaintiff's conviction.

[10] In this opinion, we refer to this legal rule as the "*Peeler* doctrine."

pet.) (mem. op.); *McLendon v. DeToto*, No. 14-06-00658-CV, 2007 WL 1892312, at *1–2 (Tex. App.—Houston [14th Dist.] Jul. 3, 2007, pet. denied) (mem. op.); *Golden v. McNeal*, 78 S.W.3d 488, 491–92 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Johnson v. Odom*, 949 S.W.2d 392, 393–94 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

In *Johnson v. Odom*, this court applied the *Peeler* doctrine to claims for breach of contract, breach of fiduciary duty, and a request for fee forfeiture. *See Johnson,* 949 S.W.2d at 393–94.[11] In *Golden v. McNeal*, this court extended the *Peeler* doctrine to a non-attorney, an investigator who assisted in the plaintiff's defense of the criminal charge. *See Golden*, 78 S.W.3d at 491–92. And, in *McLendon v. DeToto*, this court concluded that the *Peeler* doctrine applies to claims connected with the conviction. *See* 2007 WL 1892312, at *1. The *McLendon* court held that the *Peeler* doctrine applied to negligence claims in which the claimant was seeking damages based upon a criminal defense attorney's alleged negligence in pre-trial matters that did not directly relate to the conviction, such as counsel's alleged negligence in failing to obtain a pre-trial bond reduction and failing to obtain release for the accused from administrative segregation. *See id.* at *1–2. This court rejected the plaintiff's argument that the *Peeler* doctrine did not apply because he was complaining of pre-trial matters. *See id*. at *2. This court held that, under the *Peeler* doctrine, the plaintiff's conviction was the sole proximate cause of the plaintiff's injuries, whether those injuries occurred pre-trial or during trial. *See id.*

---

[11] The *Johnson* court stated that the plaintiff sought "refund of attorneys [sic] fees." This phraseology is sometimes used to refer to requests for fee forfeiture. *See Finger v. Ray*, 326 S.W.3d 285, 288–89 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We conclude that the plaintiff in *Johnson* sought forfeiture of the attorney's fees. *See Johnson*, 949 S.W.2d at 393.

In *Meullion v. Gladden*, this court concluded that the *Peeler* doctrine applies to claims based on allegedly actionable conduct connected with the conviction. *See* 2011 WL 5926676, at *3–4. The *Meullion* court applied the *Peeler* doctrine to a claim against an attorney retained to draft a post-conviction petition for writ of habeas corpus that was not filed, in which the convicted individual/claimant alleged that the attorney wrongfully obtained the $10,000 fee from him, thus depriving him of the financial resources to retain another attorney to seek habeas relief. *See id.* at *2–4. The *Meullion* court applied the *Peeler* doctrine to a claim for damages for conduct alleged to have occurred after the criminal conviction and that did not directly result from the conviction. *See id*.

Under this court's precedent applying an expansive interpretation of the *Peeler* doctrine, we conclude that the Law Firm's Alleged Breaches of Fiduciary Duty are connected with Futch's conviction and that Futch's request for fee forfeiture falls within the scope of the *Peeler* doctrine. *See Meullion*, 2011 WL 5926676, at *2–4; *McLendon*, 2007 WL 1892312, at *1–2; *Golden*, 78 S.W.3d at 491–92; *Johnson*, 949 S.W.2d at 393–94. *See also Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) (noting that under principles of horizontal stare decisis, a panel of this court is bound by a prior holding of another panel of this court absent a decision from a higher court or this court sitting en banc which is on point and contrary to the prior panel holding or an intervening and material change in the statutory law).

Futch also argues that the *Peeler* doctrine does not apply to a fee-forfeiture request because causation is not an essential element of a breach-of-fiduciary duty for which the only remedy sought is fee forfeiture and because the main purpose of the fee-forfeiture remedy is to protect relationships of trust by discouraging

disloyalty by the fiduciary. Futch is correct that causation is not an element necessary to obtain the fee-forfeiture remedy and that the underlying purpose of this remedy is not to compensate the plaintiff for damages caused by the clear and serious breach of fiduciary duty. But, as noted, in a prior precedent, this court already has applied the *Peeler* doctrine to a request for fee forfeiture. *See Johnson*, 949 S.W.2d at 393–94.

Futch argues that the *Peeler* doctrine does not apply because the Alleged Breaches of Fiduciary Duty were not connected with his criminal conduct. Still, most of these alleged breaches purportedly occurred during the course of a criminal investigation that led to Futch's indictment and conviction, and this court has applied the *Peeler* doctrine to cases involving allegedly actionable conduct that was not directly related to the criminal conviction.[12] *See Meullion*, 2011 WL 5926676, at *2–4; *McLendon*, 2007 WL 1892312, at *1–2.

Futch asserts that not allowing this claim to proceed would violate the important public policy embodied by the attorney-client privilege, which Futch claims the Law Firm violated. Nonetheless, the *Peeler* plurality concluded that

---

[12] On appeal, the Law Firm asserts that Futch is barred from obtaining fee forfeiture because he did not pay any attorney's fees to the Law Firm. *See Gregory v. Porter & Hedges, L.L.C.*, 398 S.W.3d 881, 885–86 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Elizondo v. Krist*, 338 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 415 S.W.3d 259 (Tex. 2013). Though it appears that Futch may not have paid any fees to the Law Firm, he did not affirmatively make an assertion to this effect in his live pleading, nor did the Law Firm submit summary-judgment evidence proving that Futch did not pay any fees to the Law Firm. Furthermore, because the Law Firm did not assert this issue as a summary-judgment ground in either of its summary-judgment motions, we cannot affirm the trial court's summary judgment on this basis. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Similarly, the Law Firm's appellate argument that Futch is barred from obtaining fee forfeiture under the doctrine of unclean hands does not provide a basis for affirming the trial court's judgment because the Law Firm did not assert this doctrine as a ground in either of its summary-judgment motions. *See id.*

Peeler's claims failed as a matter of law based on the policy reasons the plurality articulated, even if the attorney in that case failed to communicate to his client the prosecutor's offer of absolute immunity. *See Peeler*, 909 S.W.2d at 496, 498. Thus, the *Peeler* doctrine is based on strong policy considerations that preclude civil liability in the situations in which the doctrine applies, despite the possibility that the attorney may have engaged in serious misconduct.[13] *See id.*

Under this court's precedent, the *Peeler* doctrine applies to Futch's request for fee forfeiture based on the Law Firm's Alleged Breaches of Fiduciary Duty. *See Meullion*, 2011 WL 5926676, at *2–4; *McLendon*, 2007 WL 1892312, at *1–2; *Golden*, 78 S.W.3d at 491–92; *Johnson*, 949 S.W.2d at 393–94.[14] Because Futch has not been exonerated, his fee-forfeiture request fails as a matter of law under the *Peeler* doctrine. *See Meullion*, 2011 WL 5926676, at *2–4; *McLendon*, 2007 WL 1892312, at *1–2; *Golden*, 78 S.W.3d at 491–92; *Johnson*, 949 S.W.2d at 393–94. Accordingly, as to this request, the trial court did not err in granting summary judgment in favor of the Law Firm.

## IV. CONCLUSION

Futch's claim against the Law Firm for damages resulting from its alleged disclosure of confidential or privileged information to Justice Department officials sounds in tort, not in contract. Therefore, the trial court did not err in granting

---

[13] Futch also asserts that this court should take the suggestion made by Chief Justice Phillips in his dissenting opinion in *Peeler* that the *Peeler* doctrine may not apply to breach-of-contract claims. *See Peeler*, 909 S.W.2d at 502, n.1 (Phillips, C.J., dissenting). But, we already have concluded that Futch's purported breach-of-contract claim does not sound in contract, so this issue is not before this court today. In any event, as noted above, this court already has applied the *Peeler* doctrine to a breach-of-contract claim. *See Johnson,* 949 S.W.2d at 393–94.

[14] To the extent that we were to consider Futch's purported breach-of-contract claim as actually being a claim for damages based on breach of fiduciary duty, this damage claim likewise would be barred under the *Peeler* doctrine under a similar analysis.

summary judgment as to Futch's breach-of-contract claim. Under this court's precedent, the *Peeler* doctrine applies to Futch's request for fee forfeiture based on the Law Firm's Alleged Breaches of Fiduciary Duty. Because Futch has not been exonerated, the fee-forfeiture request fails as a matter of law. The trial court did not err in granting summary judgment. Accordingly, we overrule Futch's sole appellate issue and affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Busby and Brown.[15]

---

[15] Originally, this case was submitted before a panel consisting of Justices Frost, Jeffrey Brown, and Busby. Following the appointment of Justice Jeffrey Brown to the Supreme Court of Texas and the appointment of Justice Frost as Chief Justice of the Fourteenth Court of Appeals, this case was resubmitted to the current panel of Chief Justice Frost, Justice Busby, and Justice Marc Brown.

18