# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00366-CV

**James Allen Brickley, Appellant**

**v.**

**Copper Investigations & Consulting, LLC, and Ron Potts, Appellees**

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 22DCV334761, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant James Allen Brickley appeals the trial court's dismissal of his suit against Copper Investigations & Consulting, LLC, and Ron Potts. Finding the claims in the suit barred by the *Peeler* doctrine, we affirm.

## BACKGROUND

Convicted of two felony counts of aggravated sexual assault and having exhausted the criminal appeals process, Brickley first brought a civil action against his defense attorney, Justin Elliott Reed. *See Brickley v. State*, 623 S.W.3d 68 (Tex. App.—Austin 2021, pet. ref'd); *Brickley v. Reed*, No. 03-22-00453-CV, 2023 WL 2376127 (Tex. App.—Austin Mar. 7, 2023, no pet.) (mem. op.). In that first civil action, Brickley alleged, inter alia, breach of contract and violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA). 2023 WL 2376127, at *1. Reed filed a Rule 91a motion to dismiss the case, arguing that

Brickley's causes of action were actually legal malpractice claims that could not survive the rule of causation known as the "*Peeler* doctrine," given that he had not been exonerated. *Id.* The trial court granted Reed's Rule 91a motion and dismissed all the claims in the suit—a decision we later affirmed. *Id.* at *1, 5.

Meanwhile, Brickley filed a second civil action, this time against Copper Investigations and Potts (Potts)—the investigator Brickley had hired to help Reed—again pleading breach of contract and violation of the DTPA. Brickley claimed mental anguish and sought unliquidated damages of $100,000 and liquidated damages of $4,900. Potts filed a Rule 91a motion to dismiss, noting Brickley's similar suit against Reed, and making the same arguments that Reed had made. The trial court granted the motion and dismissed all claims in the suit. Brickley now appeals the dismissal in this second lawsuit. In three issues, Brickley argues (1) Rule 91a does not apply to an indigent prisoner's litigation; (2) Potts and the trial court engaged in an improper ex parte communication; and (3) the *Peeler* doctrine does not apply to his claims.

**ANALYSIS**

*1. Dismissal Under Rule 91a*

In his first issue, Brickley argues that because he is an indigent prisoner, the trial court could not dismiss his claims under Rule 91a. Texas Rule of Civil Procedure 91a permits a trial court to dismiss a claim if it finds that the claim has no basis in law or fact. Tex. R. Civ. P. 91a.1, 91a.3. However, the rule itself provides that it does not apply to cases "governed by Chapter 14 of the Texas Civil Practice and Remedies Code." *Id.* Chapter 14 governs non-family code civil cases initiated by prisoners who seek to prosecute their cases as paupers. Tex. Civ.

2

Prac. & Rem. Code § 14.002. Therefore Chapter 14 applies and Rule 91a does not. *See Harrell v. Godinich*, No. 01-21-00720-CV, 2023 WL 3311168, at *2 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.). This is so even if Brickley failed to comply with all the pleading requirements in Chapter 14. *See McLean v. Livingston*, 486 S.W.3d 561, 562 (Tex. 2016) (per curiam). Like Rule 91a, Chapter 14 permits a trial court to dismiss a claim if it finds that the claim has no basis in law or fact. Tex. R. Civ. P. 91a.1; Tex. Civ. Prac. & Rem. Code § 14.003(a)(2), (b)(2). The trial court's order dismissing the action provided:

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

The Court, after considering Defendants, Copper Investigations & Consulting, LLC and Ron Potts's Motion to Dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure, the response, and arguments of counsel:

**GRANTS** the Motion to Dismiss Baseless Cause of Action and orders that Plaintiff's suit for Breach of Contract, violations of the Texas Deceptive Trade Practices Act and any other relief be dismissed in whole.

SIGNED on _____6/14/2023_____.

JUDGE PRESIDING

As discussed below, by the time the trial court rendered judgment, it had before it the arguments from both Potts and Brickley referencing Chapter 14, its applicability, and its "no arguable basis in law or in fact" standard for dismissal. We therefore read the trial court's order to encompass a Chapter 14 dismissal. Even if it does not, though, Brickley cannot show harm. *See Enriquez v. Crain*, No. 03-17-00363-CV, 2018 WL 3320986, at *2 (Tex. App.— Austin July 6, 2018, no pet.) (mem. op.). Rule 91a authorizes dismissal on the same and

3

narrower grounds than does Chapter 14,[1] so a case dismissed under Rule 91a would necessarily be dismissed under Chapter 14. And under either the rule or the statute, the question of whether a claim has no arguable basis in law or fact is a legal question that we review de novo. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We overrule Brickley's first issue.

2. *Ex parte Communication*

Brickley next argues the trial court abused its discretion by considering Potts's post-hearing letter brief—which Brickley characterizes as an ex parte communication—to determine the outcome of the case. Brickley argues the trial court committed error by allowing the communication, without offering him an opportunity to respond to the supplemental arguments.

The record reflects the trial court held a hearing on Potts's motion to dismiss on May 19, 2023. On May 23, 2023, Potts efiled a letter brief to the trial court, on which he copied Brickley, addressing, for the first time, Chapter 14. Potts noted that Rule 91a and Chapter 14 both authorize dismissal of claims having no basis in law, and his underlying argument is that

---

[1] Chapter 14 also allows a court to dismiss a claim if it finds the inmate filed false declarations required by the chapter, *see* Tex. Civ. Prac. & Rem. Code § 14.003(a)(1), (3), and allows a trial court determining whether to dismiss a claim as "frivolous or malicious" to consider not just whether the claim has "no arguable basis in law or in fact" but also whether "the claim's realistic chance of ultimate success is slight," "it is clear that the party cannot prove facts in support of the claim," or "the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts." Tex. Civ. Prac. & Rem. Code § 14.003(a), (b).

"Plaintiff's lawsuit is frivolous as a matter of law because the facts asserted fall squarely under the *Peeler* doctrine."

On May 31, 2023, the same day Brickley received the copy of the letter brief, Brickley drafted an Objection to Improper Ex Parte Communication—noting the trial court did not request the extra briefing and Potts did not make a motion to reopen the case before submitting it. Brickley asked the trial court to sustain his objection and to refuse to consider the May 23, 2023 communication.

On June 1, 2023, before the objection was filed, the trial court announced to Brickley and Potts that it would grant the motion to dismiss. It did so through an email stating,

Mr. Brickley and Mr. Bearden:

The court grants Defendants' Motion to Dismiss claims in the above case. Mr. Bearden shall prepare and sent the court an order pursuant to this ruling.

Judge Jack Jones

Cc to Mr. Brickley by mail

The email, in the appendix of Brickley's brief, is not part of the clerk's record, though Brickley requested a supplemental clerk's record be prepared to include it. The supplemental clerk's record instead contains a letter from the district clerk's office stating the June 1, 2023 email was not a part of the court's file.

On June 7, 2023, Brickley's written objection was filed in the trial court. And on June 14, 2023, the trial court signed the written order dismissing the case.

Under Canon 3(B)(8) of the Texas Code of Judicial Conduct, a judge generally cannot initiate, permit, or consider ex parte communications concerning the merits of a pending case. Tex. Code Jud. Conduct, Canon 3(B)(8). "An ex parte communication is one that concerns the matter, that is between a lawyer representing a client and a judicial officer, and that occurs

5

outside of the presence and without the consent of other parties to the litigation or their representatives." Restatement (Third) of the Law Governing Lawyers § 113 (2000); *Ex Parte Communication*, Black's Law Dictionary (11th ed. 2019) ("A communication between counsel or a party and the court when opposing counsel or party is not present – such communications are ordinarily prohibited."). "The purpose behind prohibiting ex parte communications is to ensure that all legally interested parties are given their full right to be heard under the law." *Randolph v. Texaco Expl. & Prod., Inc.*, 319 S.W.3d 831, 836 (Tex. App.—El Paso 2010, pet. denied).

The post-hearing letter brief was a pleading, not an ex parte communication. *See* Restatement (Third) of the Law Governing Lawyers § 113 (2000) ("A written communication to a judicial officer with a copy sent timely to opposing parties or their lawyers is not ex parte."). Here, Potts filed the letter brief with the court and served a copy of it on Brickley. *See* Tex. R. Civ. P. 21. Although the communication was not ex parte, Brickley's underlying complaint is that he was unable to register his objection with the trial court before it dismissed the case on June 1, 2023; his objection was not filed until June 7, 2023. Brickley points indirectly to the trial court's June 1, 2023 email and directly to the trial court's June 1, 2023 docket entry, which states "ct grants Defendants' motion to dismiss Plaintiff's claims."

"Rendition and signing are judicial acts that can, but need not, occur at the same time." *Baker v. Bizzle*, 687 S.W.3d 285, 291–92 (Tex. 2024). Here, the trial court signed the judgment dismissing the case on June 14, 2023. And given controlling caselaw, we conclude the trial court rendered judgment on that same day. In *Baker v. Bizzle*, the Supreme Court of Texas addressed whether a trial court rendered judgment in an email sent only to the parties' lawyers. *Id.* at 287. The Court held that it did not: "A written or oral ruling shared only with the parties

6

or their counsel in a nonpublic forum is not a public announcement of the court's decision and, therefore, does not constitute a rendition of judgment." *Id*. The Court held that even if the email contained a present, complete, and final decision, the email was "fatally deficient as a rendition of judgment because there was no judicial action to publicly announce the court's decision on the matters at issue." *Id*. at 293. More specifically,

> It is undisputed that the trial court did not orally announce, in open court, its decision on the issues addressed in the October 4 email. Nor is it alleged that the court delivered the email to the clerk of the court for filing, entry, or inclusion in the public record or took any actions reasonably calculated to effectuate such delivery.

*Id*. The same is true here.

The record reflects the trial court did not deliver the email to the clerk for filing. Quite the opposite, as the clerk represented that it was not a part of the record. We do not find the June 1, 2023 docket sheet entry compels a different result than that in *Baker* because the email contemplated that a judgment would thereafter be prepared by Potts's counsel and presented to the trial court for signature. *See Vetri Ventures, LLC v. Westridge Eagles Nest Owners Ass'n*, No. 05-21-01172-CV, 2024 WL 1130504, at *3-4 (Tex. App.—Dallas Mar. 15, 2024, no pet.) (mem. op.) (neither docket entry nor email constituted rendition of judgment). And it was. "Ordinarily, when there is a question concerning the date judgment was rendered, the date the judgment was signed prevails over a conflicting docket sheet entry." *Garza v. Texas Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 7 (Tex. 2002). Because the rendition date is June 14, 2023, the trial court had time to consider Brickley's objection to the letter brief.

We overrule Brickley's second issue.

*3. The Peeler Doctrine*

Brickley argues that the trial court abused its discretion in dismissing his case because *Peeler* does not extend to "breach of contract actions," nor to "suits against a private investigator hired separately to conduct an independent investigation, who did nothing at all to fulfill the contract." He also argues that his current claims are in no way like those he made against defense counsel Reed.

*Peeler* concerns the causation element of legal-malpractice claims. Under the *Peeler* doctrine, "convicts may not sue their criminal-defense attorneys for malpractice unless 'they have been exonerated on direct appeal, through post-conviction relief, or otherwise.'" *Gray v. Skelton*, 595 S.W.3d 633, 637 (Tex. 2020) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995) (plurality op.)). This is because "[i]t is the convicted criminal's illegal conduct, not the attorney's negligence, that proximately causes the conviction." *Id.* (citing *Peeler*, 909 S.W.2d at 497–98). "So if convicted criminals want to sue their defense attorneys, they must first remove the proximate-cause bar," and they do so "by being 'exonerated.'" *Id.* (quoting *Peeler*, 909 S.W.2d at 498).

The *Peeler* court identified several public policy principles at issue, including that "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict" and to "a third party." *Peeler*, 909 S.W.2d at 498. As we noted in Brickley's case against his attorney, plaintiffs may not avoid the *Peeler* doctrine by splitting, or fracturing, what are in essence malpractice claims into separate claims under non-negligence theories like breach of contract or violations of the DTPA. *Brickley*, 2023 WL 2376127, at *2.

The Fourteenth Court of Appeals found the language used in *Peeler* "broad enough to encompass claims of negligence or malpractice on the part of non-attorneys" and

applied the doctrine to bar a DTPA claim against an investigator who had worked for the defense in a criminal trial. *Golden v. McNeal*, 78 S.W.3d 488, 492 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The court noted that "legal malpractice is essentially a claim for professional negligence," and to recover "under malpractice, negligence, or the DTPA, a plaintiff must prove causation." *Id.* The court noted that Golden had presented "no reason why the rationale of *Peeler* regarding sole proximate cause in a criminal conviction should not apply equally to an investigator as to defense counsel."[2] Neither does Brickley, who hired Potts for the same reasons he hired defense counsel, "to clear his name." What he does argue though, is that *Peeler* does not apply to bar his breach of contract claim. The *Golden* court did not consider the issue of whether a contract claim against an investigator is barred by the *Peeler* doctrine because it found Golden did not sue the investigator for breach of contract. *Id.* But many courts of appeals, including this one, as referenced above, have held the *Peeler* doctrine bars breach of contract claims against attorneys when those claims are in fact professional-negligence claims. *See Brickley*, 2023 WL 2376127, at *2 (citing cases from Austin, Fort Worth, Houston, and Dallas courts).

Brickley's breach of contract claim alleges Potts failed to initiate communication with Brickley's attorney and pursue an investigation or keep Brickley informed about the investigation; interview witnesses or the alleged victim; make himself available for court; maintain communication in concerns of the contract; provide a report of his investigation or

---

[2] *See also Falby v. Percely*, No. 09-04-422 CV, 2005 WL 1038776, at *1 (Tex. App.--Beaumont May 5, 2005, no pet.) (mem. op.) (applying *Peeler* to bar malpractice and DTPA claims against unlicensed legal assistant); *Canaan v. Bartee*, 72 P.3d 911, 921–22 (Kan. 2003) (applying exoneration rule to bar malpractice and breach of contract claims against person performing investigative work for attorney).

supporting documents; or provide an accurate billing statement. Brickley's DTPA claims reframed the same failures as intentional conduct and include allegations that Potts misled him about pursuing an investigation where no investigation took place; knowingly made false or misleading statements of facts, when stating that more funds were needed to interview witnesses, with no intention to actually conduct those interviews; failed to inform him that he would not release his report or documents to him directly due to unnamed privacy laws; presented misleading billing statements that suggested he was out of funds when he was merely low on funds; and refused to render an accurate billing statement.

Brickley distances this case from the one he filed against Reed (there was "no similarity between the suits"). But these claims mirror the claims Brickley made against Reed, which were that Reed acted arbitrarily to his position prior to and during trial by, in part, lying to him and by failing to: subpoena witnesses to the proper trial date; investigate witnesses as agreed; keep him reasonably informed; litigate in any reasonably prevailing manner; bring evidence to trial; inform him of rights and the procedures available to him; or turn over the client file as agreed. *Id.* at *3. We held that the real issue underlying the allegations against Reed was whether Reed exercised the degree of care, skill, and diligence that professionals of ordinary skill and knowledge exercise—a legal malpractice claim. *Id.* The same is true here.

Brickley, however, points to *Gonyea v. Scott*, 541 S.W.3d 238 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). In that case, Scott's complaint was not that the services he received fell below a subjective or objective standard of care or contributed to his conviction, but that, instead, he received no representation at all. *Id*. at 243. In a bench trial, the trial court found that "Scott hired Gonyea to investigate and file a writ of habeas corpus on Scott's behalf; Gonyea 'did not conduct the investigation,' 'did not file a writ of habeas corpus,' and 'did not

10

perform the services promised in the written contract.'" *Id*. Gonyea also received double his required $15,000 retainer in error, failed to return the $15,000 overpayment and instead deposited it into his operating rather than his trust account. *Id*. at 241-42. The court of appeals held the evidence sufficient to support the trial court's findings and held that the public policies identified in *Peeler* did not support extending the doctrine to claims seeking restitution of fees paid for legal services that were not performed. *Id*. at 247-48. Instead, "requiring some evidence of active representation to invoke *Peeler* defensively recognizes that the constitutional right to assistance of counsel is foundational to our criminal-justice system." *Id*. at 247.

Brickley states that his argument is like Scott's—that he has not recast a professional negligence claim; his complaint is that Potts did nothing at all. But Brickley's own pleading distinguishes his claims from Scott's. He acknowledges Potts worked with his attorney and reviewed evidence provided to him by the attorney but complains about Potts's representation to him that communications about the investigation should go through his attorney to preserve the attorney-client privilege. He acknowledges Potts eventually provided his sister with paperwork about the investigation after the investigation as was promised in the contract, but he takes issue with the information in that paperwork. He acknowledges Potts provided his sister with billing records, and attached them to his pleadings, but again, takes issue with the information within them.

Brickley's complaints, though couched in absolute terms, are allegations that Potts failed to exercise the degree of care, skill, and diligence that professionals of ordinary skill and knowledge exercise. *See Lempar v. Ballantyne*, No. 04-22-00621-CV, 2023 WL 8896917, at *3 (Tex. App.—San Antonio Dec. 27, 2023, no pet.) (mem. op.) (concluding case not analogous to *Gonyea* because plaintiff was represented by counsel in his habeas appeal). Given

11

Brickley's failure to assert innocence or claim exoneration, and the similarity of this second suit to his first, the trial court did not err in dismissing the breach of contract or DTPA claims. *See Golden*, 78 S.W.3d at 492; Tex. Civ. Prac. & Rem. Code § 14.003(b)(4). We therefore overrule Brickley's third issue.

## CONCLUSION

Having overruled Brickley's three issues, we affirm the trial court's judgment.

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed: May 16, 2025